IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

KRISTIN BELVIN PLAINTIFF

VERSUS NO. 1:24-CV-008-SA-RP

WAL-MART STORES EAST, LP,
WSE MANAGEMENT, LLC,
WSE INVESTMENT, LLC,
WAL-MART STORES EAST, LLC,
AND WALMART, INC. DEFENDANTS

JURY TRIAL DEMANDED

# COMPLAINT

This is a civil action to recover compensatory and punitive damages for the Defendants' commission of the common law torts of false arrest, and intentional infliction of emotional distress. The following averments support this civil action:

## PARTIES

1. The Plaintiff, Kristin Belvin, is an adult resident citizen of Tupelo, Lee County, Mississippi.

2. The Defendant, Wal-Mart Stores East, LP, ("WMSELP"), is a Delaware Limited Partnership with its domicile in Delaware and Arkansas. The General Partner of WMSELP is the Defendant WSE Management, LLC. The Limited Partner of WMSELP is the Defendant WSE Investment, LLC. The Defendant WMSELP may be served with process by service of a complaint and summons upon its registered agent,

C. T. Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

3. The Defendant, WSE Management, LLC, ("WSEM"), is a single-member Delaware Limited Liability Company with its domicile in Delaware and Arkansas. The single-member of WSEM is the Defendant Wal-Mart Stores East, LLC. The Defendant WSEM may be served with process by service of a complaint and summons upon its registered agent, C. T. Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

4. The Defendant, WSE Investment, LLC, ("WSEI"), is a single-member Delaware Limited Liability Company with its domicile in Delaware and Arkansas. The single-member of WSEI is the Defendant Wal-Mart Stores East, LLC. The Defendant WSEI may be served with process by service of a complaint and summons upon its registered agent, C. T. Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

5. The Defendant, Wal-Mart Stores East, LLC, ("WMSELLC"), is a single-member Arkansas Limited Liability Company with its domicile in Arkansas. The single-member of WMSELLC is the Defendant Walmart, Inc. The Defendant WMSELLC may be served with process by service of a complaint and summons upon its registered agent, C. T. Corporation System, 645 Lakeland East Drive, Suite 101,

Flowood, Mississippi 39232.

6. The Defendant, Walmart, Inc., ("Walmart"), is a Delaware Corporation with its Principal Place of Business in Arkansas. The Defendant Walmart may be served with process by service of a complaint and summons upon its registered agent, C. T. Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

JURISDICTION & VENUE

7. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 (Diversity) since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

a. Ms. Belvin is a citizen of Mississippi;

b. The Defendant WMSELP is a citizen of Delaware and Arkansas as its General Partner is domiciled in Delaware and Arkansas, and its Limited Partner is domiciled in Delaware and Arkansas;

c. The Defendant WSEM is a citizen of Delaware and Arkansas as its single member is domiciled in Delaware and Arkansas;

d. The Defendant WSEI is a citizen of Delaware and Arkansas as its single member is domiciled in Delaware and Arkansas;

e. The Defendant WMSELLC is a citizen of Delaware and Arkansas as its single member is domiciled in Delaware and Arkansas;

f. The Defendant Walmart is a citizen of Delaware and Arkansas.

8. Venue is proper in the Northern District of Mississippi, pursuant to 28 U.S.C. § 1391, since a substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

CAUSE OF ACTION

9. Ms. Belvin is a licensed attorney and a long time loyal customer of the Defendants' retail stores.

10. On January 14, 2023, Ms. Belvin shopped at the Defendant WMSELP retail store located on West Main Street in Tupelo, Mississippi.

11. After completing her shopping, Ms. Belvin went to the self-checkout area to pay for her purchases.

12. Ms. Belvin opened the Walmart Pay App on her phone, scanned the QR code on the register, and scanned all of the items she intended to purchase, including a vacuum cleaner.

13. When Ms. Belvin scanned all of the items, she pressed the green "Finished" button in the App, then loaded her purchases, including the vaccum cleaner, into her shopping cart.

14. However, Ms. Belvin was concerned the transaction did not go through properly and that a male customer behind her at the self-checkout might be

purposefully or inadvertently paying for his items through her account.

15. A female associate employed by the Defendants asked to see Ms. Belvin's receipt for the purchase of the vacuum cleaner and Ms. Belvin re-booted her App to check the transaction and show her the receipt.

16. However, because the store was busy the young associate waved Ms. Belvin off and motioned for her to go on her way.

17. Ms. Belvin, still concerned about whether or not the App worked properly and whether the male customer behind her was paying for his items through her account, did not leave the store but instead got out of the way of the check-out line in order to sort the matter out.

18. Ms. Belvin asked the female associate to check the self-checkout register to confirm the transaction was not still open and to get a manager to void the transaction if there were any problems.

19. Ms. Belvin made no effort to leave the store, as she wanted to make ceratin the transaction was processed correctly and she paid for all of her items.

20. At that time, four loss-prevention officers surrounded Ms. Belvin and grabbed hold of her shopping cart and the items she had purchased and told her to come with them.

21. Ms. Belvin, shocked at being surrounded by four loss-prevention employees

and having her cart grabbed, understood that she was not free to leave the store.

22. Ms. Belvin felt threatened and intimidated having been surrounded by four loss-prevention officers and having her shopping cart seized such that she felt compelled to go where the loss-prevention officers told her she had to go.

23. Before Ms. Belvin was taken away, the female associate told the loss-prevention officers surrounding Ms. Belvin that Ms. Belvin's transaction was still open, as the male customer behind her in line was still checking out his items possibly on her account.

24. Ms. Belvin was directed by loss-prevention officers to the security office, while they maintained control of her shopping cart and purchased items.

25. As a shocked and humiliated Ms. Belvin was led away, the female associate told Ms. Belvin the transaction would be voided.

26. The loss-prevention officers took Ms. Belvin to a small security room with monitors.

27. Ms. Belvin was told to produce her identification and she handed a man who appeared to be in charge her license.

28. This individual looked at the monitors and spoke with another person on the telephone while Ms. Belvin, in a state of utter disbelief, waited.

29. Ms. Belvin spoke nervously with a dark-haired female loss-prevention

employee. Ms. Belvin told her that she was an attorney and this was a mistake. Ms. Belvin recounted what happened at the checkout line. Ms. Belvin asked whether she would be detained without being able to call anyone, and whether or not this matter would involve the police or some paperwork. The female loss-prevention employee stated the individual who appeared to be in charge was the boss.

30. The person in charge then accusingly asked Ms. Belvin who many times she had tried to leave Walmart without trying to pay.

31. Ms. Belvin was angry, frustrated, and anxious over the situation and the employees false accusation and stated she had never tried to steal and they had no evidence that she failed to pay for her purchases or leave the store without paying.

32. At this point Ms. Belvin was scared, humiliated, and angry to the point of tears.

33. The individual in charge continued to level accusatory questions of Ms. Belvin and she answered as best she could all the while making it clear she had done nothing wrong and they had no reason to suspect she had done anything wrong.

34. Eventually, the security person in charge told Ms. Belvin that they would choose to believe her this time.

35. After Ms. Belvin was then given back her license she was directed by the head of security to an aisle where she would be permitted to check out while escorted

by loss prevention officers who alone were permitted to handle her purchases through the check-out lane.

36. Ms. Belvin was shocked and horrified at her treatment and broke down in the store at the weight of the false accusation leveled against her, her false detention, and the humiliation she was forced to endure.

37. Ms. Belvin left the store after having been falsely accused and detained for approximately forty-five minutes.

38 . After submitting a written complaint to the Defendants, Ms. Belvin spoke with an employee of the Defendants tasked with discussing her complaint.

39. This individual apologized for the treatment Ms. Belvin had been subjected to, after reading her complaint and reviewing the security footage from the night in question.

40. This individual told Ms. Belvin that management should have been called to cancel her transaction.

41. Ms. Belvin was told there was a known glitch in the Walmart Pay system and agreed that her transaction was still ongoing with the man behind her scanning his purchases on her account.

42. Ms. Belvin was also told that she would have never been detained had he been working that evening. He mentioned that the loss-prevention employees who

surrounded her were doing a training exercise that evening and that those employees would be retrained, including regarding the Walmart Pay system.

43. As a result of the Defendants' actions, Ms. Belvin suffered and continues to suffer physical sickness and extreme mental and emotional distress.

44. The actions and omissions of the Defendants', through their employees and agents, were done within the course and scope of their employment and in furtherance of their corporate interests.

45. The actions and omissions of the Defendants, through their employees and agents, were done intentionally, knowingly, recklessly, and in a grossly negligent manner for which Ms. Belvin is entitled to receive punitive damages.

Claim 1 - False Arrest

46. The actions and omissions of the Defendants in falsely detaining Ms. Belvin, in the absence of any good faith basis or probable cause, and in an unreasonable and extended manner, constitutes the common law tort of false arrest, which intentionally or recklessly caused Ms. Belvin severe physical sickness, emotional distress and mental anguish.

Claim 2 - Intentional Infliction of Emotional Distress

47. The actions and omissions of the Defendants in falsely accusing her of stealing, falsely detaining her, and purposefully humiliating Ms. Belvin, constitutes

extreme and outrageous conduct, intolerable in a civilized society, which intentionally or recklessly caused Ms. Belvin severe physical sickness, emotional distress and mental anguish.

WHEREFORE, PREMISES CONSIDERED, Ms. Belvin demands compensatory and punitive damages in an amount no less than $75,000.01 and to be determined by the trier of fact, and further demands such other and more general relief to which she is entitled by law or in equity.

Respectfully submitted, this the 11th day of January, 2024.

/s/ Victor Israel Fleitas

VICTOR I. FLEITAS
MS BAR NO. 10259

Victor I. Fleitas, P.A.
452 North Spring Street
Tupelo, Mississippi 38804
662.840.0270 / Telephone
662.840.1047 / Facsimile
fleitasv@bellsouth.net / Email

Attorneys for Kristin Belvin